Matthew C. Helland, SBN 250451
Helland@nka.com
Daniel S. Brome, SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Nicholas Conlon, NJ Bar ID 34052013*
nicholasconlon@jtblawgroup.com
Lotus Cannon, NY Bar ID 964031*
lotus.cannon@jtblawgroup.com
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
*Will seek *Pro Hac Vice* Admission

ATTORNEYS FOR PLAINTIFFS AND
OTHERS SIMILALY SITUATED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Matthew Bromlow and Johnny Walters, individually and on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>D & M Carriers, LLC dba Freymiller, and DOES 1-10, inclusive,<br><br>Defendant. | **Civil Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**(1) Minimum Wage (Cal. Labor Code §§ 1182.11, 1194, et seq., IWC Wage Order No. 9, Minimum Wage Order)**<br><br>**(2) Failure to Provide Off-Duty Meal Periods (Cal. Labor Code §§ 226.7, 512, IWC Wage Order No. 9)**<br><br>**(3) Failure to Provide Off-Duty Paid Rest Periods (Cal. Labor Code §§ 226.7, IWC Wage Order No. 9)**<br><br>**(4) Unlawful Deductions from Wages (Cal. Labor Code § 221 and IWC Wage Order No. 9, § 8)**<br><br>**(5) Failure to Timely Provide Code-Compliant Wage Statements (Cal. Labor Code § 226)** |

**(6) Failure to Pay Earned Wages Upon Discharge, Waiting Time Penalties in Violation of Labor Code §§ 201-203;**

**(7) Violations of the Unfair Competition Law (UCL) (Business & Professions Code §§ 17200-09)**

**(8) Unreimbursed business expenses (Cal. Labor Code § 2802)**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

1.     This class action is brought by Plaintiffs Matthew Bromlow ("Bromlow") and Johnny Walters ("Walters") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated by and through their attorneys Nichols Kaster LLP and Brown, LLC, against D & M Carriers, LLC (doing business as Freymiller, hereinafter "Freymiller" or "Defendant"), to recover unpaid minimum wages and other relief relating to violations of the California Labor Code and California's Industrial Welfare Commission Wage Order No. 9 ("IWC Wage Order No. 9").

2.     Freymiller is in the business of transporting temperature-controlled freight, and engaged Plaintiffs as truck drivers to provide transportation services for its customers.

3.     Freymiller classified some of its truck drivers, such as Plaintiff Walters, as independent contractors, and others, such as Plaintiff Bromlow, as employees. Nevertheless, Freymiller retained the right to exercise all necessary control over all Plaintiffs, such that Plaintiffs were Freymiller's employees under California law.

4.     Plaintiffs worked as truck drivers for Defendant and seek relief for violations of California law arising out of Defendant's policy of failing to pay minimum wage for all hours worked; failing to provide off-duty meal periods; failing to permit and authorize paid, off-duty rest periods; making unlawful deductions from wages; failing to provide accurate itemized wage statements; failing to timely pay all wages due; and failing to reimburse all business expenses, all in

violation of the California Labor Code and California's Industrial Welfare Commission Wage Order No. 9 ("IWC Wage Order No. 9").[1]

5.     Through this action, Plaintiffs, on their own behalf and on behalf of two classes, seek unpaid minimum wages, liquidated damages, meal and rest period premiums, reimbursement of unlawful deductions from wages, penalties for failure to provide accurate wage statements, penalties for failure to timely pay all wages due, reimbursement of business expenses, restitution, interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because at least one member of Plaintiffs' class is a citizen of a state different from Defendant, there are over 100 members in the putative class, and the amount in controversey exceeds $5,000,000.

7.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

8.     Defendant's contacts  with this jurisdiction have been systemic and continuous. Both Plaintiffs Bromlow and Walters regularly drove to California during their time with Freymiller.

9.     As set forth further below, all of Defendant's truck drivers regularly drive in California, Defendant communicates with its truck drivers while they are driving through California, tracks truck drivers while they travel through California, and designates load pick-ups and drop-offs in California.

---

[1] Plaintiffs are aware of the Grant of Petition of Determination of Preemption, issued December 28, 2018 by the Federal Motor Carrier Safety Administration, finding that California's meal and rest period laws are preempted by federal law.  That Order is being challenged at the United States Court of Appeals for the Ninth Circuit in case number 18-73488. Plaintiffs believe it is appropriate to stay their meal and rest period claims pending that review.

10.     All of the alleged wage and hour violations occurred as a result of Plaintiffs and Class members performing the work Defendant assigned them to complete in California, and all arise from Defendant's conduct towards its drivers working in California.

11.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b)(1) and (2) because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of this judicial district.

12.     **Intradistrict Assignment.** Pursuant to Local Rule 3-2 this matter should be assigned to the Oakland or San Francisco Divisions of the Northern District of California because this action arises in Alameda County.

## PARTIES

**Plaintiffs**

13.     Plaintiff Matthew Bromlow is an adult resident of Purcell, OK.

14.     Plaintiff Bromlow worked for Defendant as a truck driver from approximately October 2016 to approximately March 2017. Plaintiff Bromlow was classified as an employee throughout this time. Defendant calls employee drivers, like Plaintiff Bromlow, "Company Drivers."

15.     While driving for Defendant, Plaintiff Bromlow drove to California regularly, at least once per month. Plaintiff Bromlow traveled through numerous destinations in California, including in the Central Valley, the San Francisco Bay Area, the Los Angeles area, and the Inland Empire. Plaintiff Bromlow traveled to locations in this district as part of his work for Defendant, including Fremont, Marina, and American Canyon. For example, on February 1, 2017, Plaintiff Bromlow made a stop in Fremont, California (Alameda County), and then drove to Marina, California (Monterey County) that same day. He then drove to Stockton, California. He made a stop there on February 2, 2017. Plaintiff Bromlow then drove to American Canyon, California (Napa County) and made a stop that same day. Plaintiff's trip sheets reflecting these trips are attached hereto as Exhibit A.

16.     Plaintiff Bromlow regularly drove through California for more than five hours, and often for over eight hours. Plantiff Bromlow was required to remain in California overnight on trips he made to California. During these overnights, Plaintiff Bromlow remained in his truck.

17.     Plaintiff Johnny Walters is an adult resident of Terra Haute, Indiana.

18.     Plaintiff Walters worked for Defendant as a truck driver from approximately July 8, 2018 through January 15, 2019. Plaintiff Walters was classified as an independent contractor throughout this time. Defendant called independent contractors, such as Plaintiff Walters, "Owner Operators."

19.     From approximately July 6, 2018 to July 8, 2018, Plaintiff Walters completed his training and orientation to become an Owner Operator. During this training period he was not paid any wages. On or around July 8, 2018, Plaintiff Walters became an Owner Operator, and Defendant began engaging him to provide temperature-controlled transportation services for Defendant's customers. Throughtout his employment at Freymiller, Defendant exercised substantial control over Plaintiff Walters.

20.     Plaintiff Walters drove for Defendant within the state of California regularly. While driving in California, Plaintiff traveled through Bakersfield, Los Angeles, Fontana, and San Diego. Plaintiff Walters regularly drove through California for more than five hours, and often for over eight hours. While he was completing assignments for Defendant, Plaintiff Walters often remained overnight in California.

21.     Plaintiffs bring their class action on behalf of themselves and two classes of similarly situated individuals pursuant Fed. R. Civ. P. 23., as defined below.

22.     At all relevant times, Defendant is, and has been, the "employer" of Plaintiffs and the Rule 23 California Classes within the meaning of California law.

**<u>Defendant</u>**

23.     Defendant Freymiller is an Oklahoma corporation.

24.     Freymiller is in the business of delivering temperature-controlled freight across the United States. Freymiller began operating in 1968 when founder, Don Freymiller, "bought his first truck in an effort to better provide for his young family."[2] "By 1980, Freymiller Trucking boasted

---

[2] https://www.freymiller.com/our-mission/

56 trucks and was exclusively devoted to hauling temperature-controlled freight."[3] As of 2019, Freymiller calls itself North America's leading trucking company, specializing in providing customers with the most reliable temperature-controlled equipment and time-sensitive transportation service in the trucking industry.

25.     As part of its temperature-controlled transporation services, Freymiller offers its customers Refrigerated Truck Shipping and Intermodal Transporation Services, which include rail and truck service. Additionally, Freymiller's logistic operations team provides its customers with 24/7 support that includes updates on the location of each customer's shipment and real-time data.

26.     Freymiller hires and employs truck drivers in its temperature-controlled delivery operations. Freymiller differentiates between employees as either "Company Drivers" or "Owner Operators."

27.     Freymiller has a Lease Purchase program for Owner Operators "to get started in [their] own business."[4] Freymiller advertises used trucks for purchase on "Heartland Used Truck Sales," an organization affiliated with Freymiller.[5]

28.     Freymiller has a truck maintenance facility to provide repairs and servicing for its drivers' trucks. The maintenance facility is open 7 days a week, 12 hours a day to keep "[their] equipment up and running."[6]

29.     Under the title "Owner Operators," Freymiller hires and employs truck drivers under an "independent contractor" arrangement. Freymiller assigns Owner Operators to pick up and drop off shipments in California, and to drive shipments through California. Freymiller communicates assigments to independent contractor drivers while they are on the road via a mobile communication system; communicates these messages to its drivers while they are in California; and tracks the

---

[3] *Id.*
[4] https://www.drive4freymiller.com/lease-purchase/ (last visited on Aug. 6, 2019).
[5] https://www.sos.ok.gov/corp/corpInformation.aspx?id=3512278063 (last visited on Aug. 6, 2019)
[6] https://www.freymiller.com/truckmaintenance/ ("Our shop is open 7 days a week, 12 hours a day to keep our equipment up and running.") (Last visited on Aug. 5, 2019).

movements of the independent contractor-driven trucks while they are in California using a software called "PeopleMap."

30.    Under the title "Company Drivers," Freymiller hires and employs truck drivers as employees. Freymiller assigns Company Drivers to pick up and drop off shipments in California, and to drive shipments through California. Freymiller communicates assignments to employee drivers while they are on the road via a mobile communications sytem; communicates these messages to its drivers while they are in California; and tracks the movement of its employee-driven trucks using a software called "PeopleMap."

31.    Defendant Does 1-10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants are responsible in some manner for the occurrences herein alleged, and that the damages of Plaintiffs and the putative class members herein alleged were proximately caused by such Defendants.

## FACTUAL ALLEGATIONS

32.    At all relevant times, Defendant employs and has employed truck drivers. Some drivers, such as Plaintiff Bromlow, are classified as employees. Some drivers, such as Plaintiff Walters, are classified as independent contractors, but are in fact employees. Defendant's truck drivers, whether classified as employees or independent contractors, are responsible for transporting temperature-controlled freight to and from Defendant's designated pick-up and drop-off locations.

33.    Defendant has engaged employee truck drivers, such as Plaintiff Bromlow, and calls these truck drivers "Company Drivers." Defendant classifies these drivers as employees and deducts w-2 withholdings from their compensation.

34.    Upon information and belief, Defendant has engaged independent contractor truck drivers, such as Plaintiff Walters. Defendant calls independent contractor drivers "Owner Operators." Defendant retained the right to exercise, and did exercise, substantial control over independent contractor truck drivers, such as Plaintiff Walters.

35.     By way of example, Freymiller provides Owner Operators all their assignments and requires them to adhere to Freymiller's operation procedures. There are times when Owner Operators have to wait for a pick-up, during which they are required by Freymiller to wait sometimes up to eight hours. Freymiller does not pay Owner Operators for the first two hours of this "Detention Period"[7] but will pay $20 an hour for every hour thereafter. Freymiller requires Owner Operators to take a 30-minute break after driving for the first 8-hour period and tracks the movements of the driver's truck using a software called "PeopleMap" to make sure the Owner Operators have taken that break. Additionally, Freymiller provides trucks for sale and lease for Owner Operators.

36.     Upon information and belief, Freymiller provides Owner Operators with a truck maintenance facility, a discounted fuel program, Qualcomm communication equipment, and paid permits. Additionally, Freymiller makes available physical damage, health, occupational/accidental, and bobtail insurances.

37.     Upon information and belief, Freymiller performs recruitment, orientation, and training of all truck drivers, including those who go on to work as independent contractors. Freymiller uses a single application process for all prospective drivers. For example, Freymiller's website has separate subpages under its "Apply Now" section for both "Company Drivers"[8] (i.e. employee drivers), and "Owner Operators"[9] (i.e. independent contractor drivers who have purchased and/or leased vehicles). Both subpages have an "Apply Now" button that links to the same application form.[10]

38.     Defendant requires both employee truck drivers and independent contractor truck drivers to complete assignments for Defendant's customers. While executing these assignments, Defendant requires both employee and independent contractor drivers to adhere to company policies.

---

[7] Detention period is the time a truck driver has to wait for a load.
[8] https://www.drive4freymiller.com/company-drivers/ (last visited Aug. 5, 2019).
[9] https://www.drive4freymiller.com/owner-operators/ (last visited Aug. 5, 2019).
[10] https://intelliapp.driverapponline.com/c/freymiller?r=drive4freymiller.com&uri_b=ia_freymiller_186798748 (last visited Aug. 6, 2019).

39.     Defendant requires both employee truck drivers and independent contractor truck drivers to log their activities on the Qualcomm system by specifying their "duty status" (driving, stopped, fueling, etc.), their arrival and departure times for all stops, and their "breaks."

40.     When Plaintiffs and other truck drivers deliver freight to and from destinations in California, they work more than six hours within the state of California, often remaining in California overnight. Defendant communicates with Plaintiffs and other drivers through the Qualcomm communication system while they are driving in California.

41.     In order to provide its customers with their shipments' locations and with real time data updates, Defendant tracks the movements of Plaintiffs and other truck drivers via a software called PeopleMap.

42.     Defendant uses this tracking software to monitor Plaintiffs and truck drivers' activities while they are on the road. For example, Defendant requires that both employee and independent contractor truck drivers take a 30-minute break at some point before they complete first 8-hour driving period. Via PeopleMap, Defendant is able to check whether its drivers are following this policy. If Plaintiffs and truck drivers do not go "Off-Duty" during this break, they will not get paid their remaining driving time.

43.     Defendant had a policy of willfully and unlawfully paying Plaintiffs and other Rule 23 California Class members a mileage rate only, without separate compensation for non-driving work activities, thereby failing to pay them the minimum wage for all hours worked, in violation of state law.

44.     Specifically, and by way of example, Defendant's mileage-based compensation scheme did not provide separate payments for Plaintiffs and Class members' time spent fueling their trucks or for time spent performing required inspections. Additionally, Defendant required Plaintiffs and Class members to sweep their trucks out and wash them after deliveries, but did not compensate them separately for these work tasks.

45.     Defendant also required that Plaintiffs and Class members stay with their truck while it was being loaded, but did not pay Plaintiffs or Class members for this work time unless the loading lasted more than two hours, and then Defendant only paid for any time beyond two hours.

46.     Where Defendant required Plaintiffs and Class members to transport produce, they would often wait up to 6 hours for the truck to be a specific temperature before the shipment could be loaded. Defendant did not compensate Plaintiffs and Class members for this time, unless it exceeded two hours, and then Defendant only paid for any time beyond two hours.

47.     Plaintiffs and Class members would have to wait up to 8 hours at the drop off destination for the loads they picked up, and were not compensated for any of this time. While they waited for a drop-off destination Plaintiffs and Class members were not allowed to leave their trucks. Plaintiffs performed these uncompensated work activities within the state of California.

48.     Plaintiffs were responsible for their trucks during their non-driving time, including the time they were sleeping. When the truck was loaded, Plaintiffs and Class members were required to remain in the truck overnight. Defendant did not compensate Plaintiffs or Class members for any of this time.

49.     Defendant's policy was that Plaintiffs Bromlow and Walters and other direct employees were to take one 30-minute break before completing their first 8-hour driving period. As a result, Plaintiffs and Class members often drove over 6 hours in a day in the state of California without any breaks.

50.     The truck drivers' work is integral to Defendant's business, as they transport temperature-controlled, time sensitive shipments, such as food, for Defendant's customers to destinations designated by Defendant and its customers. Moreover, according to the Defendant's website, Defendant has a reputation as the leader in temperature-controlled transportation services, a reputation that can only be maintained through the work of its truck drivers.

51.     Defendant did not provide any extra compensation for time spent on breaks, even though Plaintiffs and Class members were responsible for their trucks during breaks, and therefore were not completely relieved from duty.

52.     Defendant required that Plaintiffs and Class members take a 30-minute "Break," but Defendant required that Plaintiffs and Class members fuel their trucks during this "Break" period. Thus, Plaintiffs and Class members took no break at all. By way of example, if Plaintiffs or Class members wanted to eat a meal, they still needed to remain near their truck at all times.

53.    Defendant did not provide premium pay for missed meal or rest periods.

54.    Defendant did not provide Plaintiffs and Class members with accurate pay stubs, and often would not provide them at all.

55.    The pay stubs Defendant did provide Plaintiffs and Class members failed to disclose, among other things, the total hours worked and the applicable hourly rates. Plaintiffs and Class members submitted information regarding Detention Periods to Defendant, and Defendant did not provide Detention Period payments consistently.

56.    Plaintiffs have left their employment with Defendant, but Defendant has not paid Plaintiffs all the wages due and owing, as outlined in this complaint.

57.    Plaintiff Walters, and other independent contractor drivers, were not reimbursed for numerous business expenses incurred for their work for Defendant, including but not limited to the purchase and/or lease of vehicles; fuel, maintenance, oil changes, washes, and other vehicle operating costs; DOT inspections; motel costs for staying overnight during jobs; various forms of insurance; and cellular telephone expenses required by Defendant for receiving dispatch assignments and tracking progress.

58.    Plaintiff Walters and other independent contractor drivers had a warranty on their trucks for protection in case of emergencies. However, Plaintiff Walters and the California Independent Contractor Class would have to pay the expenses the warranty was supposed to cover. If Defendant made any payments on the truck drivers' behalf, Defendant would deduct its expenses from the truck drivers' wages, sometimes not paying them any wages at all.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action on behalf of themselves and as a class action on behalf of two classes of similarly situated truck drivers. These classes, collectively referred to as the "Rule 23 California Classes," include the "California Employee Class" and the "California Independent Contractor Class." The "California Employee Class" is defined as:

*All current and former truck drivers employed by Defendant who drove within California for Defendant at any time during the applicable statutory period for the claims alleged in this complaint.*

The "California Independent Contractor Class" is defined as:

> *All current and former truck drivers who performed services for Defendant under an independent contractor arrangement who drove within California for Defendant at any time during the applicable statutory period for the claims alleged in this complaint.*

60.     This action is properly brought as a class action pursuant to the class action procedures of Rule 23 of the Federal Rules of Civil Procedure.

61.     The classes are so numerous that joinder of all members is impractical. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least fifty (50) members in each class.

62.     This litigation is properly brought as a class action because of the existence of questions of fact and law common to Plaintiffs and other members of the class which predominate over any questions affecting only individual members, including:

   a.   Whether Defendant is liable to members of the classes described above for violations of the applicable labor codes;

   b.   Whether Defendant failed to pay members of the classes described above for all hours worked;

   c.   Whether Defendant failed to provide off-duty meal periods;

   d.   Whether Defendant failed to permit and authorize paid, off-duty rest periods;

   e.   Whether Defendant made unlawful deductions from wages;

   f.   Whether Defendant knowingly and intentionally failed to provide complete, accurate wage statements;

   g.   Whether Defendant willfully failed to pay all wages due at termination of employment;

   h.   Whether Defendant misclassified members of the California Independent Contractor Class as independent contractors; and

i.   Whether Defendant improperly failed to reimburse business expenses to members of the California Independent Contractor Class.

63.   This litigation is properly brought as a class action because Plaintiffs' claims are typical of the claims of the class members, inasmuch as all such claims arise from Defendant's standard policies and practices, as alleged herein.

64.   Plaintiff Walters was classified as an independent contractor, but he and all other members of the California Independent Contractor Class were employed by Defendant under California law.

65.   Like all class members, Plaintiffs were damaged by Defendant's system-wide policies and practices of failing to pay wages for all hours worked, failing to provide off-duty meal periods failing to permit and authorize paid, off-duty rest periods, and making unlawful deductions from wages, thus giving rise to legal remedies under applicable California labor law. Additionally, like other members of the California Independent Contractor Class, Plaintiff Walters was damaged by Defendant's failure to reimburse all business expenses.

66.   Plaintiffs have no interests antagonistic to the interests of other class members.

67.   Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in class action litigation. Accordingly, Plaintiffs are adequate and will fairly and adequately protect the interests of the class.

68.   A class action is an appropriate and superior method for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate Defendants.

69.   Class certification is also fair and efficient because prosecution of separate actions by individual class members would create a risk of differing adjudications with respect to such individual members of the classes, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests. Plaintiffs anticipate there will be no difficulty in the management of this litigation. This litigation presents claims under applicable state wage statutes of a type that have often been

1    prosecuted on a class wide basis, and the manner of identifying the class members and providing any

2    monetary relief to it can easily be effectuated from a review of Defendant's records.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Failure to pay Minimum Wage For All Hours Worked Under Cal. Labor Code §§ 1182.11, 1194, et seq. and IWC Wage Order No. 9, Minimum Wage Order

**(On behalf of all Plaintiffs and the California Classes)**

8        70.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

9        71.    At all times relevant to this complaint, Labor Code §§ 1182.11, 1182.12 and 1197,

10   IWC Wage Order No. 9, and the Wage Order 9 were in full force and effect and required that

11   Defendant's nonexempt employees receive the minimum wage for all hours worked in California

12   irrespective of whether nominally paid on an hourly, piece rate, or any other basis, at the rate of $9.00

13   per hour commencing July 1, 2014; $10.00 per hour commencing January 1, 2016; $10.50 per hour

14   commencing January 1, 2017; $11.00 per hour commencing January 1, 2018; $12.00 per hour

15   commencing January 1, 2019.

16       72.    At various times throughout the relevant liability period, Defendant required Plaintiffs

17   and other Rule 23 California Class members to perform various tasks and be subject to Defendant's

18   control without compensation. This uncompensated time included, but was not limited, to time

19   performing pre-trip, post-trip and other inspections, cleaning and refueling the vehicle, on duty

20   breaks, sleep time while maintaining responsibility for the truck, and time spent with the truck while

21   it reached the appropriate temperatures, and time spent with the truck while it was being loaded and

22   unloaded.

23       73.    As a result of the mileage-rate system and failing to compensate Plaintiffs and other

24   Rule 23 California Class members for all work activities, Defendant failed to pay Plaintiffs and other

25   Rule 23 California Class members minimum wages for all hours worked, as required by law.

26       74.    As a direct and proximate result of the acts and/or omissions of Defendant, Plaintiffs

27   and other Rule 23 California Class members were deprived of minimum wages due in amounts to be

28

1   determined at trial, and to additional amounts as liquidated damages, pursuant to Labor Code §§ 1194

2   and 1194.2.

3       75.   By violating Labor Code §§ 1182.11, 1182.12 and 1197, and Wage Order No. 9,

4   Defendant is also liable for reasonable attorneys' fees and costs under Labor Code § 1194.

5       76.   Plaintiffs request relief as described below.

6                           **SECOND CAUSE OF ACTION**

7                   **<u>Failure to Provide Off-Duty Meal Periods</u>**

8               **(On behalf of all Plaintiffs and the California Classes)**

9       77.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

10      78.   Plaintiffs and other Rule 23 California Class members regularly worked in excess of

11   five (5) hours a day without taking at least a 30-minute meal period in which they were relieved of

12   all duties, as required by Labor Code §§ 226.7 and 512, and IWC Wage Order No. 9, § 11(A).

13   Plaintiffs and other Rule 23 California Class members also frequently worked in excess of 10 hours

14   in a day without taking a second 30-minute meal period in which they were relieved of all duties.

15      79.   Because Defendant failed to provide proper meal periods, Defendant is liable to

16   Plaintiffs and other Rule 23 California Class members for one hour of additional pay at the regular

17   rate of compensation for each workday that the proper meal periods were not provided, pursuant to

18   Labor Code § 226.7(b) and IWC Wage Order No. 9 § 11(B).

19      80.   Plaintiffs request relief as described below.

20                           **THIRD CAUSE OF ACTION**

21                 **<u>Failure to Provide Off-Duty Paid Rest Periods</u>**

22               **(On behalf of all Plaintiffs and the California Classes)**

23      81.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

24      82.   Plaintiffs and other Rule 23 California Class members regularly worked in excess of

25   three and a half hours a day without being afforded at least a paid 10-minute rest period in which

26   they were relieved of all duties, as required by Labor Code §§ 226.7, and IWC Wage Order No. 9, §

27   12(A).

28

CLASS ACTION COMPLAINT

83.     Because Defendant failed to afford proper paid rest periods, Defendant is liable to Plaintiffs and other Rule 23 California Class members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Labor Code § 226.7(b) and IWC Wage Order No. 9, § 12(B).

84.     Plaintiffs request relief as described below.

<strong>FOURTH CAUSE OF ACTION</strong>

<strong><u>Unlawful Deductions from Wages Pursuant Labor Code § 221 and IWC Wage Order No. 9</u></strong>

<strong>(On behalf of all Plaintiffs and the California Classes)</strong>

85.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

86.     Defendant, in violation of Labor Code § 221 and IWC Wage Order No. 9, § 8, made unlawful deductions form Plaintiffs' and other Rule 23 California Class members' wages to cover Defendant's ordinary business expenses including, but not limited to, rental car charges that Defendant had agreed to cover pursuant the warranty it provided its truck drivers, and withholding wages when Plaintiffs or Class Members did not log a "Break" before the end of their first 8-hour driving period.

87.     Pursuant Labor Code § 221, Plaintiffs and Rule 23 Class members were injured when Defendant withheld wages owed to be paid to them through unlawful deductions.

88.     Pursuant IWC Wage Order No. 9, § 8, Plaintiffs and Rule 23 Class Members were injured because Defendant made unlawful deductions by withholding wages for reasons unrelated to Plaintiffs or Class Members' gross negligence, or dishonest or willful act.

89.     Because Defendant made unlawful deductions from Plaintiffs and the Rule 23 Class members' wages, it is liable to compensate them for the wages they should have been paid.

90.     Plaintiffs request relief as described below.

<strong>FIFTH CAUSE OF ACTION</strong>

<strong><u>Failure to Timely Provide Code-Compliant Wage Statements Pursuant to Labor Code § 226</u></strong>

<strong>(On behalf of all Plaintiffs and the California Classes)</strong>

91.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

92.     Defendant, in violation of Labor Code § 226(a), knowingly and intentionally failed to furnish Plaintiffs and other Rule 23 California Class members with accurate, itemized wage statements showing all items required pursuant to said code section, including, but not limited to, total hours worked, rates of pay, and hours worked at each rate of pay.

93.     Pursuant to Labor Code section 226(e)(2), Plaintiffs and class members suffered injury because, due to Defendant's failure to provide the required information, Plaintiffs and other Rule 23 Class Members could not promptly and easily determine, among other things, their hours worked, rates of pay, and hours worked at each rate of pay.

94.     Plaintiffs request relief as described below, including damages and/or penalties pursuant to Labor Code § 226(e)(1) for each violation by Defendant of Labor Code §226(a), an injunction requiring compliance with Labor Code § 226, and an award of reasonable attorneys' fees and costs pursuant to Labor Code § 226(h).

## SIXTH CAUSE OF ACTION

## Late Pay and Waiting Time Penalties Pursuant to California Labor Code §§ 201-203

### (On behalf of all Plaintiffs and the California Classes)

95.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

96.     California Labor Code sections 201 and 202 require an employer to pay its employees all wages due within the time specified by law. Labor Code section 203 provides that if an employer willfully fails to pay such wages, the employer must continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

97.     Plaintiffs and other Class Members who ceased employment with Defendant are entitled to unpaid compensation, but to date have not received such compensation, more than 72 hours after the cessation of their employment.

98.     Defendant failed to pay the earned and unpaid wages of all Plaintiffs within 30 days from the time such wages should have been paid under Labor Code sections 201 and 202.

99.     Defendant willfully failed to timely compensate Plaintiffs and other Class Members for all hours worked. As a result, Defendant is liable to Plaintiffs and other Class members whose

employment ended within the year prior to the initial filing of this suit for waiting time penalties under California Labor Code section 203.

### SEVENTH CAUSE OF ACTION

### <u>Violations of the Unfair Competition Law</u>

### (On behalf of all Plaintiffs and the California Classes)

100. Plaintiffs re-allege and incorporate all previous paragraphs herein.

101. Business & Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

102. Business & Professions Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the UCL.

103. Defendant committed unlawful, unfair, and/or fraudulent business acts and practices as defined by Business & Professions Code § 17200, by engaging in the following:

    a. failing to provide adequate, off-duty meal periods to Plaintiffs and other Rule 23 California Class members and failing to pay them premium pay for missed meal periods;

    b. failing to permit and authorize adequate and paid off-duty rest periods to Plaintiffs and other Rule 23 California Class members and failing to pay them premium pay for missed/unpaid rest periods;

    c. failing to pay minimum wage compensation to Plaintiffs and other Rule 23 California Class members for all hours worked; and

    d. making unlawful deductions for Plaintiffs and other Rule 23 Class members' wages.

104. The violations of these laws serve as unlawful, unfair, and/or fraudulent predicate acts and practices for purposes of Business & Professions Code § 17200.

105. As a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent acts and practices described herein, Defendant received and continues to hold ill-gotten gains belonging to Plaintiffs and other Rule 23 California Class members. As a direct and proximate result of Defendant's unlawful business practices, Plaintiffs and other Rule 23 California Class members suffered economic injuries including, but not limited to, compensation for missed meal and rest

periods and loss of minimum wages. Defendant has profited from its unlawful, unfair, and/or fraudulent acts and practices in the amount of that unpaid compensation and interest accrued by Plaintiffs and other Rule 23 California Class members.

106. Plaintiffs and other Rule 23 California Class members are entitled to restitution pursuant to Business & Professions Code §§ 17203 and 17208 for all unpaid minimum wages, missed meal and rest period compensation, and interest for four years prior to the filing of this action.

107. Plaintiffs' success in this action will enforce important rights affecting the public interest. In this regard, Plaintiffs sue on behalf of the public as well as on behalf of themselves and others similarly situated. Plaintiffs seek and are entitled to reimbursement of unpaid compensation, declaratory relief, and any other appropriate remedy.

108. In order to prevent Defendant from profiting and benefiting from its wrongful and illegal acts and continuing those acts, the Court should issue an order requiring Defendant to restore such moneys in which Plaintiffs and other Rule 23 California Class members have an ownership interest, including the unpaid compensation complained of herein.

109. Plaintiffs have assumed the responsibility of enforcement of the laws and lawful claims specified herein. There is a financial burden incurred in pursuing this action which is in the public interest. Therefore, reasonable attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5.

110. Pursuant to Business & Prof. Code §17203, Plaintiffs and other Rule 23 California Class members are entitled to: (a) restitution of money acquired by Defendant by means of their unfair business practices, in amounts not yet ascertained but to be ascertained at trial; and (b) a declaration that Defendant's business practices were unfair within the meaning of the statute.

111. Plaintiffs request relief as described below.

### EIGHTH CAUSE OF ACTION

### Unreimbursed Business Expenses Pursuant to California Labor Code § 2802

### (On behalf of Plaintiff Walters and the California Independent Contractor Class)

112. Plaintiffs re-allege and incorporate all previous paragraphs herein.

113.   While acting on the direct instruction of Defendant and discharging their duties for them, Plaintiff and other California Independent Contractor Class members incurred work-related expenses. Such expenses included but were not limited to the purchase and/or lease of vehicles; fuel, maintenance, oil changes, washes, and other vehicle operating costs; DOT inspections; motel costs for staying overnight during jobs; various forms of insurance; and cellular telephone expenses required by Defendant for receiving dispatch assignments and tracking progress.

114.   Plaintiff Walters and other California Independent Contractor Class members incurred these substantial expenses and losses as a direct result of performing their job duties for Defendant.

115.   Defendant failed to indemnify or adequately reimburse Plaintiff Walters and other California Independent Contractor Class members for these expenditures and losses. By requiring truck drivers to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendant and/or in obedience of Defendant's direction, Defendant violated Labor Code § 2802.

116.   As a result of unlawfully deducting wages and failing to reimburse Plaintiff Walters and other California Independent Contractor Class members, Defendant is also liable for reasonable attorneys' fees and costs under Labor Code § 2802(c).

117.   As a direct and proximate result of Defendant's conduct, truck drivers suffered substantial losses, as well as pre-judgment interest, costs, and attorneys' fees for the prosecution of this action.

118.   Plaintiffs request relief as described below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, pray for judgment against Defendant as follows:

a.   That the Court determine that this action may be maintained as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

b.   That Plaintiffs be designated as the representatives of the Rule 23 California Classes, and Plaintiffs' Counsel be designated class counsel;

c.      That Defendant be ordered and enjoined to pay damages and restitution to Plaintiffs and other Rule 23 California Class members due to Defendant's unlawful activities, pursuant to California state law cited above;

d.      That Defendant be further enjoined to cease and desist from unlawful activities in violation of state laws cited above;

e.      Judgment that Defendant violated the Labor Code and IWC Wage Order No. 9 as to Plaintiffs and other Rule 23 California Class members by:

    1.  Failing to pay at least the applicable minimum wage for all hours worked;

    2.  Failing to provide 30-minute, off-duty meal periods to Plaintiffs and other Rule 23 California Class members;

    3.  Failing to authorize or permit 10-minute, paid, duty-free rest periods to Plaintiffs and other Rule 23 California Class members;

    4.  Making unlawful deductions form Plaintiffs and the Rule 23 Class members' wages;

    5.  Failing to provide Plaintiffs and other Rule 23 California Class members with itemized statements of showing all hours worked, rates of pay, and hours worked at each rate of pay;

    6.  Failing to pay all wages due and owing at the time of termination of employment, resulting in unpaid waiting time penalties;

    7.  Violating California Business & Professions Code sections 17200-17209, by failing to provide off-duty meal periods and/or pay meal period compensation to Plaintiffs and other Rule 23 California Class members, by failing to pay Plaintiffs and other Rule 23 California Class members minimum wage compensation, and by making unlawful deductions from wages earned by Plaintiffs and Rule 23 California Class members.

f.      An award to Plaintiffs and other Rule 23 California Class members of unpaid minimum wage compensation, liquidated damages, penalties, and meal and rest period compensation, reimbursement of unlawful deductions made, including interest thereon,

1   subject to proof at trial;

2        g.      That Defendant be ordered to pay restitution to Plaintiffs and other Rule 23 California

3   Class members for amounts gained through Defendant's unlawful activities pursuant to

4   Business and Professions Code sections 17200-05 and enjoined to cease and desist from

5   unlawful and unfair activities in violation of California Business and Professions Code

6   section 17200 et seq.;

7        h.      An award to Plaintiffs and other Rule 23 California Class members of reasonable

8   attorneys' fees and costs, pursuant to California Code of Civil Procedure section 1021.5 and

9   California Labor Code sections 226, 1194, 2802, and/or other applicable law;

10       i.      An award of unreimbursed business expenses, pursuant to Labor Code § 2802;

11       j.      Leave to amend to add additional claims, including claims under California's Private

12  Attorney General Act ("PAGA"), and

13       k.      An award to Plaintiffs and other Rule 23 California Class members of such other and

14  further relief, in law or equity, as this Court deems appropriate and just.

15  <u>**DEMAND FOR JURY TRIAL**</u>

16       Plaintiffs, Matthew Bromlow and Johnny Walters, individually and on behalf of all others

17  similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38

18  of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with

19  respect to the above entitled cause.

20

21

22  Dated: August 26 , 2019            NICHOLS KASTER, LLP
                                      BROWN, LLC

23

24                                 _s/ Matthew C. Helland_____
                               Matthew C. Helland

25                                 Attorneys for Plaintiff and Others Similarly Situated

26

27

28

# EXHIBIT A

# TRIP REPORT

O N L I N D M C C

## FREYMILLER

**TRIP #**

| 1 | 3 | 7 | 0 | 4 | 9 | 1 |

**TRACTOR #**

| 6 | 4 | 2 | 9 |

DATE 2/2/17

| PREVIOUS FINAL DROP | Milan MO |
|---|---|
| ORIGIN CITY STATE | Schuyler NE |
| DEST CITY STATE | STOCKTON CA |

| DATE | SHIPPER CONSIGNEE | ALL PICKUPS & DROPS CITY STATE |
|---|---|---|
| 1/28 | Cargil | Schuyler NE |
| 2/1 | Newart | Fremont CA |
| 2/1 | Del Monte | Marina CA |
| 2/2 | C&S | Stockton CA |
| | | |
| | | |
| | | |
| | | |
| | | |

**TRAILER #** | 17095 |

## CASH PURCHASES REQUIRING RECEIPT FOR REIMBURSMENT

| CASH PURCHASES | AMOUNT |
|---|---|
| CASH FUEL | |
| SCALES | 11.00 |
| TOLLS | |
| PERMITS | |
| REPAIRS (TRUCK) | |
| REPAIRS (TRAILER) | |
| TRK/TRAILER WASH | |
| TRAILER WASHOUT | |
| OIL | |
| SHUTTLE PAY | |
| LAYOVER PAY | |
| OTHER | |

### ADVANCES

| DATE | AMOUNT |
|---|---|
| | |
| | |
| | |
| | |

### REQUIRED RECEIPTS NEEDING DISPATCH APPROVAL

| | AMOUNT | DISPATCHER |
|---|---|---|
| LUMPER | | |
| LUMPER | | |
| LUMPER | | |
| PALLET | | |

### SIGNATURE REQUIRED

| DRIVER SIGNATURE | Matthew Bramel |
|---|---|
| PRINT NAME | MATTHEW BROMLOW |
| CO-DRIVER SIGNATURE | |
| PRINT NAME | |