1
2
3
4                  UNITED STATES DISTRICT COURT

5                NORTHERN DISTRICT OF CALIFORNIA

6

7   MATTHEW BROMLOW, et al.,          Case No.  19-cv-05358-JSW

8                Plaintiffs,
                                      ORDER GRANTING MOTION TO
9        v.                           TRANSFER AND DENYING AS MOOT
                                      MOTION TO DISMISS
10  D & M CARRIERS, LLC,
                                      Re: Dkt. Nos. 40, 41
11               Defendant.

12

13          Now before the Court are motions to transfer and dismiss filed by D & M Carriers, LLC

14  d/b/a Freymiller ("Freymiller").  The Court has considered the parties' papers, relevant legal

15  authority, and the record in this case, and it finds the motion suitable for disposition without oral

16  argument.  *See* Civil L.R. 7-1(b).  For the reasons set forth below, the Court HEREBY GRANTS

17  the motion to transfer and DENIES AS MOOT Freymiller's motion to dismiss.

18                               **BACKGROUND**

19          Freymiller is an Oklahoma liability company that provides trucking services throughout

20  the United States.  (Dkt. No. 40-1 (Declaration of Andrea Strano ("Strano Decl.")) ¶¶ 3, 4.)  Some

21  of the freight transportation work Freymiller facilitates is performed by what Freymiller describes

22  as "independent contractors/owner-operators."  (Dkt. No. 40-2 (Declaration of David Duncan

23  ("Duncan Decl.")) ¶ 4 and Ex. A (ICOELA).)  To work with Freymiller, some of these drivers

24  sign Independent Contractor Operating and Equipment Lease Agreements ("ICOELAs").  (*Id.* ¶

25  4.)

26          Plaintiff Johnny Walters provided transportation services to Freymiller and executed an

27

28

ICOELA on July 5, 2018.  (*Id.*, Ex. A, p. 14-15[1].)  At the time he executed his ICOELA, and during the time he performed services for Freymiller, Mr. Walters was a Florida resident: he possessed a Florida-issued commercial driver's license and documentation concerning his pay and compensation was sent to Mr. Walters at his Florida address.  (*Id.* ¶¶ 8, 9.)  Approximately 9% of the miles Mr. Walters drove for Freymiller were driven in California.  (Dkt. No. 40-1 (Strano Decl.) ¶¶ 16, 17.)  A forum-selection clause in Mr. Walters's ICOELA provides that "[t]he courts of the State of Oklahoma and the U.S. District Court for Oklahoma shall have exclusive jurisdiction over the parties concerning the rights, duties, obligations, and liabilities arising under this Agreement."  (Dkt. No. 40-2 (Duncan Decl.) Ex. A, p. 12.)

Plaintiff Matthew Bromlow also provided transportation services to Freymiller.  During the time he drove for Freymiller, he was an Oklahoma resident.  (Dkt. No. 40-4 (Declaration of Trish Tevlin ("Tevlin Decl.")) ¶ 6.)  He had an Oklahoma commercial driver's license, and documentation concerning his pay and compensation was sent to Mr. Bromlow at his Oklahoma address.  (*Id.* ¶¶ 5, 6.)  Approximately 6% of the miles Mr. Bromlow drove while driving for Freymiller were in California.  (Dkt. No. 40-1 (Strano Decl.) ¶ 13.)  Mr. Bromlow did not sign an ICOELA.

Plaintiff Benny Stewart also provided transportation services to Freymiller.  During the time he drove for Freymiller, he was a California resident.  (*Id.* ¶¶ 14, 15.)  He had a California commercial driver's license, and documentation concerning his pay and compensation was sent to him at his California address.  (Dkt. No. 40-4 (Tevlin Decl.) ¶¶ 7, 8.)  Approximately 21% of the miles Mr. Stewart drove for Freymiller were in California.  (Dkt. No. 40-1 (Strano Decl.) ¶¶ 14, 15.)  Mr. Stewart did not sign an ICOELA.

On August 26, 2019, Mr. Bromlow and Mr. Walters filed a putative class action alleging various wage and hour claims under California law and contending that they, and other similarly situated drivers, were improperly classified as independent contractors when they were, in fact, Freymiller's employees.  (Dkt. No. 1.)  On October 24, 2019, Freymiller filed a motion to transfer

---

[1]Page numbers in citations to the record are native to the document and not native to the ECF docket stamp.

United States District Court
Northern District of California

and a motion to dismiss.  (Dkt. Nos. 28, 29.)  On November 6, 2019, Mr. Bromlow and Mr.

Walters filed an amended complaint, with Mr. Stewart joining as a representative plaintiff.  (Dkt.

No. 35.)  Freymiller filed updated motions to transfer and dismiss on November 26, 2019.  (Dkt.

Nos. 40, 41.)

The Court will address additional facts as necessary below.

## ANALYSIS

**A.     Applicable Legal Standards.**

**1.     Motion to Transfer.**

Freymiller moves to transfer this matter to the Northern District of Oklahoma.  Pursuant to

28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice,

a district court may transfer a civil action to any district where the case could have been filed

originally.  The moving party bears the burden of showing that the inconvenience of litigating in

this forum favors transfer.  *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086,

1088 (N.D. Cal. 2002) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279

(9th Cir. 1979)).  In order to meet its burden, the moving party must present affidavits or

declarations to establish facts supporting transfer.  *Forte Capital Partners v. Harris Cramer*, No.

07-cv-01237-MJJ, 2007 WL 1430052, at *2 (N.D. Cal. May 14, 2007) (citations omitted).  A

district court has broad discretion to evaluate a motion to transfer based on an "individualized,

case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487

U.S. 22, 29 (1988) (citation and quotation omitted).

In order for a district court to transfer an action under § 1404, the Court must find: (i) the

transferee court is one where the action "might have been brought" and (ii) the convenience of the

parties and witnesses and the interest of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758

F.2d 409, 414 (9th Cir. 1985).  The convenience of the parties and witnesses is subordinate to the

interest of justice, which is the "predominant" consideration.  *Madani v. Shell Oil Co.*, No. 07-cv-

04296-MJJ, 2008 WL 268986, *2 (N.D. Cal. Jan. 30, 2008); *see also Mussetter Distrib., Inc. v.

DBI Beverage Inc.*, No. 09–cv-1442-WBS-EFB, 2009 WL 1992356, *6 (E.D. Cal. July 8, 2009).

To determine whether the moving party has met its burden of demonstrating that

3

convenience and the interest of justice favor transfer, a court may consider multiple factors, including: (i) the location where relevant agreements were negotiated and executed, (ii) the state most familiar with the governing law, (iii) the plaintiff's choice of forum, (iv) the respective parties' contacts with the forum, (v) the contacts relating to the plaintiff's cause of action in the chosen forum, (vi) the differences in the costs of litigation in each fora, (vii) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (viii) the ease of access to evidence. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). This list is not exclusive, and a court may consider other factors. *Global Hawk Ins. Co. v. Vega*, 15-cv-02093-YGR, 2015 WL 7720801, at *3 (N.D. Cal. Nov. 30, 2015).

   **2.  Forum-Selection Clause.**

    A valid forum-selection clause is "enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59, 62 n.5 (2013). A valid, applicable forum-selection clause changes the typical § 1404(a) analysis. *Id.* at 63 (quotation omitted). Once the court determines such a forum-selection clause exists, the court must conclude that all the "private interest" factors entailed in motion to transfer analysis as "weighing 'entirely in favor of the preselected forum.'" *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-88 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 64, 62 n.6). A court may consider public interest factors, but such factors will rarely defeat a motion to transfer in the face of a valid, applicable forum-selection clause. *Id.* at 1088 (quoting *Atl. Marine*, 571 U.S. at 64, 62 n.6). The party opposing transfer bears the burden to demonstrate why the court should not transfer the case to the forum described in the forum-selection clause. *Id.* (quoting *Atl. Marine*, 571 U.S. at 63–64). The practical result is that a forum-selection clause should control except in "unusual cases." *Id.* at 1088 (quoting *Atl. Marine*, 571 U.S. at 64).

   //

   //

   //

   //

United States District Court
Northern District of California

**B.      Discussion.**

**1.      Scope of Forum-Selection Clause.**

Here, Plaintiffs do not contest the validity of the forum-selection clause.[2]  Accordingly, the Court focuses its analysis on whether the dispute as alleged implicates the forum-selection clause.

The scope of a forum-selection clause depends on the clause's language. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011).  Courts should construe a clause containing the phrases "arising under," "arising out of," or similar language narrowly to cover disputes "relating to the interpretation and performance of the contract itself." *Id.* (quotation and citation omitted).  A clause that covers disputes "relating to" an agreement, on the other hand, is broader and covers any dispute with some "logical or causal connection" to the agreement. *Sun*, 901 F.3d at 1086.  Here, the forum-selection clause at issue in the ICOELA concerns "rights, duties, obligations, and liabilities *arising under* the Agreement."  (Dkt. No. 40-2 (Duncan Decl.) Ex. A p. 12.)  Accordingly, the Court must construe the clause narrowly to cover dispute relating to interpretation and performance of the ICOELA.  *See Cape Flattery*, 647 F.3d at 922.

Plaintiffs' complaint alleges unfair competition and various wage and hour claims under California law and centers upon whether Plaintiffs are properly classified as independent contractors or employees.  The California Supreme Court's relatively recent decision *Dynamex* "made clear that all workers are presumed to be employees." *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-cv-4176-WHA, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018) (discussing *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 955–56 (2018)).  *Dynamex* held that an employer can demonstrate its hired workers are not employees by showing (i) the worker is free from its control and direction, (ii) the worker performs work outside the usual course of the hiring entity's business, and (iii) the worker customarily engages in an independently-established trade, occupation, or business of the same nature as the work performed for the hiring entity.[3] *Dynamex*,

---

[2] Plaintiffs also do not contest that the matter could have been brought in the Northern District of Oklahoma.

[3] The three-part *Dynamex* test is sometimes known as the "ABC Test."  This test specifically applies to determining employee-independent contractor status in the context of Wage Orders. *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959, n.4 (9th Cir. 2018).  Four of Plaintiffs' causes of

1    4 Cal. 5th at 958–62.

2          Mr. Walters is the only plaintiff to have executed an ICOELA.  Regardless of the fact that

3    Plaintiffs' complaint does not contain an affirmative request to enforce the ICOELA, an inquiry

4    into Mr. Walters's employment status will entail analysis of whether he was "free from"

5    Freymiller's "control," which, in turn, will involve an examination and interpretation of the

6    ICOELA's provisions and their effect.  (*See, e.g.*, Dkt. No. 40-2 (Duncan Decl.) Ex. A p. 6-7

7    ("CARRIER shall not establish for CONTRACTOR . . . set hours of work, means or methods for

8    performance of the services, and CARRIER will not provide tools, materials, or other equipment

9    for CONTRACTOR's use in performance of its services hereunder.").)  Therefore, even though

10   the forum-selection clause is narrow, Mr. Walters' claims fall within its scope.  *See Rahimi v. Mid*

11   *Atl. Prof'ls, Inc.*, No. 18-cv-278-CAB-KSC, 2018 WL 3207383, at *4 (S.D. Cal. June 29, 2018)

12   (FLSA claim required interpretation of labor contract); *see also Zako v. Hamilton Co.*, No. 15-cv-

13   03162-EJD, 2016 WL 344883, at *4 (N.D. Cal. Jan. 28, 2016) (same).

14         The Court does not break new ground in ruling that claims that do not sound in contract

15   may fall within the scope of a narrow forum-selection clause.  For example, in *Cung Le v. Zuffa,*

16   *LLC*, 108 F. Supp. 3d 768 (N.D. Cal. 2015), the plaintiffs brought antitrust claims under the

17   Sherman Act.  The defendant argued that transfer was warranted due to a forum-selection clause in

18   agreements it had with some of the plaintiffs.  *Id.* at 775-77.  The court rejected the plaintiffs'

19   contention that the forum-selection clause applied only to claims sounding in contract and

20   concluded that, because the contracts were the vehicle for the alleged anticompetitive activity,

21   contractual interpretation was required in order to adjudicate the merits of the plaintiffs' claims.

22   *Id.* at 777.  That result is consistent with the Court's ruling here: the strong judicial preference for

23   enforcing a contractually bargained-for venue is not compatible with allowing creative plaintiffs to

24   skirt forum-selection clauses by pleading around claims sounding in contract.  *See id.* at 776

25   (observing that "restrictive and mechanical interpretation" of a forum-selection clause is

26   inconsistent with judicial preference); *see also Zako*, 2016 WL 344883, at *4 (forum-selection

27

28   _____

     action allege violations of Wage Orders.

United States District Court
Northern District of California

clauses "not meant to be construed so narrowly that they only apply to actions directly seeking performance of enumerated terms of a contract"); *Graham Tech. Sols. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1432-33 (N.D. Cal. 1997) (applying forum-selection clause where copyright infringement claims related to interpretation of contract containing forum-selection clause). Because adjudicating Plaintiffs' claims will require interpretation of the terms and effect of the ICOELA, at least with respect to Mr. Walters, the forum-selection clause applies.

Of course, Mr. Stewart and Mr. Bromlow never signed an ICOELA, much less an ICOELA with a forum-selection clause, and Plaintiffs argue that Mr. Stewart and Mr. Bromlow should not be bound to the forum-selection clause that only Mr. Walters signed. Yet, forum-selection clauses can be applied to non-signatories where the conduct of the non-parties is closely related to the contractual relationship. *Manetti v. Farrow, Inc. v. Gucci, Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Non-signatories are typically bound by (or may avail themselves of) forum-selection clauses in circumstances where they have an agency relationship of some kind with a signatory or the signatory is a predecessor-in-interest. *See e.g.*, *Vistage Worldwide, Inc. v. Knudsen*, No. 19-cv-01351-JLB, 2020 WL 71140, at *6–8 (S.D. Cal. Jan. 7, 2020) (collecting cases). In the case at hand, Mr. Stewart and Mr. Bromlow do not have such a relationship with Mr. Walters.

As far as this Court can ascertain, only one opinion in a district court in the Ninth Circuit has held that non-signatory plaintiffs may "subject" their cases to a forum-selection clause by joining a case to which signatories are party. *See Cung Lee*, 108 F. Supp. 3d at 775 n.4. In *Cung Lee*, some plaintiffs had signed agreements with forum-selection clauses, and others had not. Even so, the court concluded that the forum-selection clause applied and that the entire case should be transferred. The court explained that non-signatory plaintiffs had "subjected their cases to the applicable forum-selection clause by choosing to join a collective action with other [signatory] plaintiffs." *Id.* In so concluding, the *Cung Le* court noted the language of the forum-selection clause at issue, which applied to "*any action* brought by either party to interpret or enforce any provision" of the agreement. *Id.* at 775. The court underscored that the forum-selection clause applied to "actions," "*not just individual claims.*" *Id.* at 775 n.4 (emphasis

added).

Here, the language of the forum-selection clause is arguably narrower. The language appears to confine Oklahoma's jurisdiction to the parties to the ICOELA: Oklahoma has jurisdiction "over the parties" (rather than actions "brought" by either party) with respect to the "rights, duties, obligations, and liabilities arising under" the ICOELA. Nonetheless, the Court concludes that all Plaintiffs should be bound by the forum-selection clause. Any plaintiff not aware of Mr. Walters's ICEOLA and accompanying forum-selection clause was put on constructive notice as of October 24, 2019, when Freymiller filed its first motion to transfer, and still Plaintiffs filed an amended complaint and forged ahead with Mr. Walters as a co-plaintiff. In so doing, Mr. Bromlow and Mr. Stewart assumed the risk that Freymiller would invoke the forum-selection clause and move to transfer this matter to the forum identified therein.

### 3.     California Labor Code section 925.

Finally, Plaintiffs argue that Mr. Stewart cannot be compelled to litigate in Oklahoma due to California Labor Code section 925. Section 925 expresses California's strong public policy against forum-selection clauses in employment agreements. *See, e.g.*, *Alabsi v. Savoya, LLC*, No. 18-cv-06510-KAW, 2019 WL 1332191, at *6–7 (N.D. Cal. Mar. 25, 2019); *Depuy Synthes Sales Inc. v. Stryker Corp.*, No. 18-cv-1557-FMO, 2019 WL 1601384, at *4 (C.D. Cal. Feb. 5, 2019). Under section 925, "[a]n employer shall not require an employee who *primarily resides and works in California*, as a condition of employment, *to agree* to a provision that would do either of the following: (1) [r]equire the employee to adjudicate outside of California a claim arising in California[; or] (2) [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Labor Code § 925(a) (emphasis added). Section 925 further states that "[a]ny provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." *Id.* § 925(b).

Notwithstanding California's strong public policy, district courts have held that section 925 does not control claims arising outside of California or claims by plaintiffs who do not

1   primarily reside and work in California.  *See Mechanix Wear, Inc. v. Performance Fabrics, Inc.*,

2   No. 16-cv-09152-ODW, 2017 WL 417193, at *7 (C.D. Cal. Jan. 31, 2017); *Felley v. Am. Fujikura*

3   *Ltd.*, No. 17-cv-2204-MCE-DB, 2018 WL 3861574, at *2 (E.D. Cal. Aug. 14, 2018).  Here, while

4   the parties agree that Mr. Stewart is a resident of California, Mr. Stewart has not shown that, while

5   he worked for Freymiller, he was working primarily in California.  In fact, Freymiller has

6   submitted evidence that only approximately 20% of Mr. Stewart's work for it occurred in

7   California.  Mr. Stewart therefore cannot void the forum-selection clause under section 925.  *See*

8   *Campbell v. FAF, Inc.*, No. 19-cv-142-WQH-BLM, 2019 WL 2574119, at *5–6 (S.D. Cal. June

9   20, 2019) (declining to apply section 925 where defendant demonstrated plaintiff did not work

10   primarily for defendant in California).

11       The forum-selection clause applies.

12       **4.    Public Interest Factors.**

13       In light of this Court's conclusion concerning the scope of the forum-selection clause in

14   the ICOELA, further analysis of the private-interest factors is unnecessary.  *Perez*, 2018 WL

15   921984, at *1 (quoting *Atl. Marine*, 571 U.S. at 62); *see also Sun*, 901 F.3d at 1087-88 (holding

16   that, when forum-selection clause is enforceable and applies, analysis of private-interest factors

17   unnecessary).

18       Typical public-interest factors courts consider when weighing a motion to transfer are the

19   relative degrees of court congestion, the courts' relative familiarity with governing law, and local

20   interest in deciding localized controversies.  *Atl. Marine*, 571 U.S. at 63-64.  Public-interest

21   factors will "rarely defeat" a motion to transfer—practically speaking, the forum-selection clause

22   will control.  *Id.*  The court congestion statistics over which the parties argue tip neither for nor

23   against transfer—the time to resolution in this district and in Oklahoma are approximately equal

24   but this district has 750 pending actions per judge compared to the Northern District of

25   Oklahoma's 292 pending actions per judge.

26       The transferor and transferee courts' relative familiarity with governing law is also neutral.

27   Federal courts in other states "routinely apply the law of a state other than the state in which they

28   sit."  *Atl. Marine*, 571 U.S. at 66-67.  Moreover, federal courts in other states are "fully capable of

United States District Court
Northern District of California

9

1    applying California law." *Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-04928 SI, 2007 WL

2    4410408, at *6 (N.D. Cal. 2007).

3        Finally, California has expressed a strong public policy interest in adjudicating

4    employment and labor matters concerning California residents and labor that occurs in California.

5    But Oklahoma, too, has an interest in ensuring that citizen businesses follow the law.  The factor

6    tips only slightly against transferring the matter to Oklahoma.  On balance, California's slightly

7    greater interest in deciding this case is insufficient to constitute "extraordinary circumstances."

8    The Court is not persuaded that "extraordinary circumstances" exist to justify overriding the

9    forum-selection clause. *See Perez*, 2018 WL 921984, at *1 (quoting *Atl. Marine*, 571 U.S. at 62).

## CONCLUSION

11       For the reasons described above, the Court HEREBY GRANTS Freymiller's motion to

12   transfer to the United States District Court for the Northern District of Oklahoma and DENIES AS

13   MOOT Freymiller's motion to dismiss.  The Clerk shall TRANSFER this matter forthwith and

14   close this Court's files.

15       **IT IS SO ORDERED.**

16   Dated: February 11, 2020

17   _____

18   JEFFREY S. WHITE
     United States District Judge

10